UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATEASE RIKARD, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 4:11-CV-01580-NAB |
| U.S. AUTO PROTECTION, LLC, et al, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Presently before the Court is Plaintiffs' Motion to Conditionally Certify a Class, Order Disclosure of Putative Class Members' Names and Contact Information, and to Facilitate Class Notice. [Doc. 13]. Plaintiffs filed a memorandum in support of the motion. [Doc. 14]. Defendants filed a memorandum in opposition to the motion. [Doc. 24]. Plaintiff filed a Reply. [Doc. 29]. Having fully considered the arguments set forth by the parties, the Court grants the motion.[1]

## Background

On September 19, 2011, Plaintiffs filed their Amended Complaint, seeking damages from Defendants for alleged violations of the federal Fair Labor Standards Act ("FLSA"), the Missouri Minimum Wage Law ("MMWL"), and unjust enrichment. [Doc. 4]. According to the complaint, Defendants are in the business of selling vehicle service contracts, and Defendants employ sales representatives to make such sales. Sales representatives are divided into two categories. "Set-up employees" have an initial conversation with a customer and when the customer is ready or nearly ready to purchase the vehicle service contract, the customer is

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the undersigned United States Magistrate. [Doc. 33].

transferred to a "closer," who finalizes the sale.² Plaintiffs contend that Defendants failed to pay sales representatives appropriate overtime compensation for hours worked in excess of forty in a workweek.

In the instant motion, Plaintiffs seek an order from the Court granting conditional certification of this case as a collective action under § 216(b) of the FLSA and authorizing Plaintiffs to send notice to all current and former sale representatives who have worked for Defendants in the last three years. Plaintiffs also request that the Court order Defendants to disclose the names, last known addresses, and dates of employment for all such sales representatives and to post notice of this case in the break room of Defendants' facility.

## Discussion

Under the FLSA an employer may not subject non-exempt employees to a work week longer than forty hours, unless the employees are compensated for the overtime hours at a rate that is one and a half times their regular hourly wage. 29 U.S.C. § 207; *see also* 29 U.S.C. § 213. An employer who violates § 207 shall be liable to the employee or employees affected for twice the amount of unpaid overtime compensation. 29 U.S.C. § 216(b). Any employee may bring an action for violation of § 207 against an employer on his own behalf, as well as for "other employees similarly situated." *Id*.

"Within the Eighth Circuit, the district courts conduct a two-step analysis to determine whether employees are 'similarly situated.'" *Littlefield v. Dealer Warranty Services, LLC*, 679 F.Supp.2d 1014, 1016 (E.D. Mo. 2010) (citing *Jost v. Commonwealth Land Title Ins. Co.*, No. 4:08CV734 CDP, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009)); *see also Schleipfer v. Mitek*

---

²Plaintiffs also refer to set-up employees as "pre-screeners."

*Corp.*, No. 1:06CV109 CDP, 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007). During the first step, the notice stage, the plaintiffs seek early conditional class certification. *Id*.

"Conditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id*. (citations omitted) (internal quotations omitted). The plaintiffs' burden at the notice stage is not onerous. *Id*. "This initial step creates a lenient standard which typically results in conditional certification of a representative class." *Chankin v. Tihen Commc'ns, Inc.*, No.4:08CV196HEA, 2009 WL 775588, at * 1 (E.D. Mo. Mar. 20, 2009). The plaintiffs can satisfy their burden through the use of affidavits, supported by admissible evidence. *Littlefield*, 679 F.Supp.2d at 1017 (citing *Jost*, 2009 WL 211943, at *2-3). The plaintiffs may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations. *Littlefield*, 679 F.Supp.2d at 1017 (citing *Jost*, 2009 WL 211943, at *2-3). If the plaintiffs satisfy this first burden, the court conditionally certifies the class, and potential class members are given notice and the opportunity to opt-in. *Schleipfer*, 2007 WL 2485007, at *3.

During the second step, the merits stage, the defendant may move to decertify the class, and the Court considers the merits, including whether the plaintiffs have shown the class comprises similarly situated employees. *Schleipfer*, 2007 WL 2485007, at *3. During this stage, the Court must determine whether the plaintiffs are, in fact, similarly situated. *See Littlefield*, 679 F.Supp.2d at 1017 (citation omitted). "This is typically done after the close of discovery when [the Court has] more information and [is] able to make a factual determination as to whether the members of the conditionally certified class are similarly situated." *Schleipfer*, 2007 WL 2485007, at *3 (citing *Davis v. NovaStar Mortg., Inc.*, 408 F.Supp.2d 811, 815 (W.D. Mo. 2005). To be similarly situated, however, "class members need not be identically situated." *Fast v. Applebee's Intern., Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007).

It is under this general framework that the Court analyzes Plaintiffs' motion to conditionally certify the class.

**Supporting Affidavits**

In support of her motion to conditionally certify the class, Plaintiff has attached the affidavits of herself (Ex. 2), Tyrone Morris (Ex. 3), Ben Peters (Ex. 4), Ammie Jacobs (Ex. 5), and Perry Spiller (Ex. 6), each of whom is a former employee of Defendants. In her affidavit, Plaintiff testifies that she worked as a closer and a set-up employee during her employment with Defendant. (Doc. 14, Ex. 2 at ¶ 1). She stated that, as a closer, she was paid a commission pay plan with a monthly minimum guarantee of $1,350, plus any commissions, if her commissions exceeded her monthly minimum. *Id.* at ¶ 4. Under this pay plan, she did not receive extra pay for hours worked in excess of forty in a week. *Id.* As a set up employee, Plaintiff was paid a salary of $400 per week regardless of how many hours she worked. *Id.* at ¶ 5. She stated that she usually worked over forty hours per week, but did not receive pay for hours worked in excess of forty in a week. *Id.* She stated that she typically worked between forty-four and fifty-two hours per week. She also noted that she observed many other set-up employees and closers working over forty hours per week. *Id.* at ¶ 6.

Tyrone Morris ("Morris") stated that he was employed by Defendants as a sales manager from November 2009 to September 2011. (Doc. 14, Ex. 3 at ¶ 1). He stated that he managed a team of employees that typically consisted of approximately five set-up employees and ten closers. *Id.* at ¶ 3. Morris stated that every set-up employee and closer worked more than forty hours per week nearly every week. *Id.* at ¶ 6. He estimated that set-up employees and closers worked between forty-five and fifty-five hours per week and some of those employees worked more than fifty-five hours per week. *Id.* Morris noted that from November 2009 to approximately mid-2011, Defendants did not pay set-up employees or closers for hours worked

in excess of forty hours in a week. *Id*. at ¶ 10. In mid-2011, Defendants changed the pay plan for set-up employees and closers to an hourly pay model where the set-up employees and closers were paid between $8 and $10 per hour in base pay and also received one-and-a-half times the base rate for hours worked in excess of forty per week. *Id*. at ¶ 11. Under the hourly plan, Morris was responsible for submitting the hours worked by his team members to the human resources manager. *Id*. Morris stated that Defendants kept set-up employees and closers on the hourly pay plan for less than two moths, and then switched the employees back to the commission based pay plan in August of 2011. *Id*. at ¶ 11. Upon the switch back to the commission based pay plan, Defendants stopped paying set-up employees and closers extra pay for overtime hours worked. *Id*. Morris stated that Defendants Matthew McLain and Shawn Vinson indicated that the change back to the commission pay plan was because overtime pay was "killing the company." *Id*. at ¶ 12.

Ben Peters ("Peters") stated that he worked for Defendants from February 2010 to September, 7, 2011. (Doc. 35, Ex. 4 at ¶ 1).[3] He worked as a closer from February 2010 through May 2011. *Id*. He was promoted to manager in May of 2011. *Id*. Peters stated that, as a closer, he typically worked between forty-eight and fifty-two hours per week, and sometimes more. *Id*. at ¶ 4. As a closer, he was paid a monthly minimum guarantee of $1,600, plus commissions, if the commissions exceeded his monthly minimum guarantee, and he did not receive extra pay for hours worked in excess of forty. *Id*. at ¶ 7. Peters said when he was a manager, the closers and set-up employees that he managed worked between forty-eight and fifty-two hours per week. *Id*. at ¶ 9. Peters also explained that Defendants switched set-up employees and closers from the commission based pay plan to an hourly pay plan with overtime pay, and then back to the

---

[3]An incomplete version of Peter's affidavit was attached to Plaintiffs' Memorandum. The Court granted Plaintiffs' Motion to Amend their Memorandum to file Peter's complete affidavit. *See* Doc. 34.

commission pay plan, as described by Morris. *Id*. at ¶ 11. Peters stated that, under the hourly pay plan, he was responsible for submitting the hours worked by his team members to the human resources manager. *Id*. Peters also stated that set-up employees and closers did not receive extra pay for overtime hours after Defendants switched back to the commission pay plan. *Id*. at ¶ 12.

Ammie Jacobs ("Jacobs") stated that she worked for Defendants as a closer from April 20, 2011 to September 14, 2011. (Doc. 14, Ex. 5 at ¶ 1). She stated that in the beginning of her employment, she was on the commission based pay plan with a monthly minimum guarantee of $1,600. Under the commission pay plan, she did not receive any extra pay for hours worked in excess of forty hour in a week. *Id*. at ¶ 4. Jacobs also described the same changes in pay plans that Morris and Peters described. *Id*. at ¶ 5. She stated that she received overtime pay while working under the hourly plan in mid-2011. *Id*. Jacobs stated that the hourly pay plan lasted approximately thirty days, and that in approximately early August, her pay plan was switched back to the commission plan. *Id*. at ¶ 5-6. She did not receive overtime pay after her pay plan was switched back to the commission pay plan *Id*. at ¶ 6. Jacobs stated that she consistently worked in excess of forty hours a week and that her hours typically ranged between forty-five and fifty-three hours per week. *Id*. at ¶ 7. She observed many other set-up employees and closers working similar hours as her. *Id*. at ¶ 8.

Perry Spiller ("Spiller") stated that he worked for Defendants as a closer from January, 2011 through the end of August, 2011. (Doc. 14, Ex. 6 at ¶ 1). In the beginning of his employment, he was paid on a commission base pay plan with a monthly minimum guarantee of $1,800. *Id*. at ¶ 3. Under the commission pay plan he did not receive extra pay for hours worked in excess of forty hours per week. *Id*. Spiller also described the pay plan changes described by Morris, Peters, and Jacobs. *Id*. at ¶ 5. He stated that, in early August 2011, the company switched his pay plan to the hourly pay plan, and he received overtime pay under that plan. *Id*.

The hourly plan lasted a month or two and he was switched back to the commission pay plan, and he no longer received extra pay for his overtime hours. *Id*. at ¶ 6. Spiller stated that he usually worked overtime on a weekly basis and he observed other set-up employees and closers work over forty hours per week. *Id*. at ¶ 7.

Based on these affidavits, the Court finds that Plaintiff has made substantial allegations that the putative class members were together the victims of a single decision, policy or plan. *Schleipfer*, 2007 WL 2485007, at *3. That decision, policy, or plan being to not pay set-up employees or closers for hours worked in excess of forty hours per week from at least November of 2009 to mid-2011, and again from approximately early August 2011 to September of 2011. Each of the affidavits discussed above support this finding.

In all, four former employees (Plaintiff, Peters, Jacobs, and Spiller) that worked as set-up employees or closers claim that they routinely worked in excess of forty hours per week and did not receive extra pay for hours worked in excess of forty in a week. Each of them also stated that they witnessed other set-up employees and closers working hours in excess of forty in a week. Further, Peters and Morris, whose responsibilities as managers included reporting hours worked by the set-up employees and closers they supervised, stated that set-up employees and closers regularly worked hours in excess of forty in a week and did not receive overtime pay.

Defendants argue that none of the allegations in the complaint or the affidavits attached to Plaintiffs' motion, set forth any facts that Defendants *required* employees to work overtime. This argument, however, goes to the merits of Plaintiffs' case, and is not yet ripe for resolution. *See Schleipfer,* 2007 WL 2485007, at *4 (finding that issue of whether Plaintiff was a managerial employee and therefore barred from representing the proposed class went to the merits of case and did not preclude conditional certification). After discovery is complete, the Court may decertify the class for that reason or for some other reason advanced by Defendants. *See Id*.

"However, [the Court] cannot deny conditional decertification of the proposed collective action simply because [Plaintiff] may not ultimately prevail on [the] FLSA claim." *Id*.

Defendants also argue that the class should not be conditionally certified because Plaintiff has failed to allege sufficient facts to indicate that the members of the proposed class are similarly situated. To this, the Court notes that, at the notice stage, "Plaintiffs need not show that members of the conditionally certified class are actually similarly situated." *Id*.; *see also Littlefield*, 679 F.Supp.2d at 1017. "Conditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Schleipfer,* 2007 WL 2485007, at *3 (citations omitted) (internal quotations omitted); *Littlefield*, 679 F.Supp.2d at 1017. Here, Plaintiff produced affidavits of five former employees, four of which, at one time or another, worked as sales representatives for Defendants. Further, all of the former employees who submitted affidavits worked for Defendants between November 2009 and September of 2011, and each claimed that set-up employees and closers worked in excess of forty hour in a week and did not receive overtime compensation. The Court finds these allegations sufficient to overcome the "relatively low hurdle of demonstrating that conditional certification of the collective action is appropriate." *Schleipfer,* 2007 WL 2485007, at *3.

**Statute of Limitations**

Defendants argue that, under the applicable statute of limitations, the period for which they should be ordered to provide employee contact information should be limited to two years. Plaintiffs, on the other hand, contend that Defendants conduct was willful and, therefore, Defendants should be ordered to provide contact information for all persons that worked as sale representatives or Defendants in the last three years.

29 U.S.C. § 255(a) provides that a cause of action under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]"  29 U.S.C. § 255(a).  "Under the FLSA, an action is considered to be commenced, for statute of limitations purposes, either (1) when the complaint is filed, if the plaintiff is named in the complaint and filed a written consent to become a party at the time the complaint was filed; or (2) on the date a consent to become a party was filed, if the plaintiff was either unnamed in the complaint or failed to file a consent at the time the complaint was filed." *Hembree v. Mid-Contnent Transport, Inc.*, No. 08-6094-CV-SJ-HFS, 2010 WL 3927764, at *1 (W.D.Mo. Oct. 4, 2010) (citation omitted).

For purposes of the FLSA, the Supreme Court has concluded that appropriate standard of "wilfulness" is whether the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Ultimately, whether an employer's violation of the FLSA is willful is a question of fact that is considered by a jury or during summary judgment.  *See, e.g.*, *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 200) (jury determined issue of willfulness); *see also Bankston v. State of Il.*, 60 F.3d 1249, 1253 (7th Cir. 1995) ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully.") (footnote omitted); *Littlefield*, 679 F.Supp.2d at 1019 ("Whether a violation is willful is an issue of fact, often addressed during summary judgment or at trial.") (citation omitted).  However, courts within the Eighth Circuit preliminarily consider this issue in determining whether notice of the collective action should go back two years or three years.  *See Chankin*, 2009 WL 775588, at *2; *Littlefield*, 679 F.Supp.2d at 1019; *Nobles v.*

*State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 3794021, at *10 (W.D. Mo. Aug. 25, 2011).

There is no set standard for the required level of evidence that a plaintiff must produce at the notice stage in order for the Court to determine that notice should go back three years, as opposed to just two years. Some courts have found that simply pleading that an employer's actions were willful is sufficient for the Court to allow notice to go back three years. *See, e.g.*, *Nobles*, 2011 WL 3794021, at *10. Other courts have also relied on the pleadings and supporting affidavits in determining that plaintiffs have satisfied the "willfulness" standard. *See Littlefield*, 679 F.Supp.2d at 1019, *See Chankin*, 2009 WL 775588, at *2.

Here, the Amended Complaint specifically alleges that Defendants willfully failed to pay overtime compensation. Complaint at ¶¶ 19, 35. Also, the affidavits offered by Plaintiff include statements that Defendants switched the pay plans of sales representatives from a commission based pay plan that did not include overtime compensation to an hourly pay plan that did pay overtime compensation, and then back to the commission pay plan with no overtime compensation. Morris stated in his affidavit that Defendants Matthew McClain and Shawn Vinson indicated that the reason for the switch back to the commission pay plan was because the overtime pay was "killing the company." Doc. 14, Ex. 3 at ¶ 1. Based on these statements, the Court, for purposes of notice of this collective action, finds that Plaintiffs have produced sufficient evidence that Defendants either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin*, 486 U.S. at 133; *see also Littlefield*, 679 F.Supp.2d at 1019 ( "[J]udicial economy is served by conditionally certifying a larger, more inclusive class, at this stage in the proceedings."). Therefore, the Court finds that, for purposes of notice of this collective action, the three year statute of limitations should apply. *See* 29 U.S.C. § 255(a).

This action was commenced on September 13, 2011, with the filing of the complaint. *See Hembree*, 2010 WL 3927764, at *1. Therefore, the opt-in class shall include all persons that worked for Defendants as sales representatives, either as set-up employees/pre-screeners or closers, between September 13, 2008 and September 13, 2011. Defendants shall provide to Plaintiffs' counsel the names, the last known addresses and the dates of employment of all such employees in a computer readable data file format.

**Notice and Consent Forms**

Plaintiffs attached a proposed Notice Form and a proposed Consent Form to their motion. *See* Doc. 14, Ex. 7; Doc. 14, Ex. 8. Defendants raised no objections to either proposed form. The Court finds that both proposed forms provide an adequate description of the nature of the case, the identity of the parties, and the rights and options of the potential opt-in plaintiffs, as well as the effects of joining this collective action. The Court therefore approves the proposed Notice Form and the proposed Consent Form.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification of a Collective Action under § 216(b) of the FLSA is **GRANTED**. [Doc. 13].

**IT IS FURTHER ORDERED** that the conditionally certified class shall include only those persons that worked for Defendants as sales representatives, either as set-up employees/pre-screeners or closers, from September 13, 2008 to September 13, 2011.

**IT IS FURTHER ORDERED** that Defendants shall provide to Plaintiffs' counsel a list, of the names, last known addresses and the dates of employment of all persons that worked for Defendants as sales representatives, either as set-up employees/pre-screeners or closers, from

September 13, 2008 to September 13, 2011. Said list shall be provided to Plaintiffs' counsel in a computer readable data file format within thirty (30) days of the date if this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' proposed Notice Form and proposed Consent Form are hereby approved and Plaintiffs are authorized to send the Notice Form and Consent Form to the conditionally certified class of opt-in plaintiffs.

**IT IS FURTHER ORDERED** that Defendants shall conspicuously post a copy of the approved Notice Form in the break room of Defendants' facility.


Dated this 23rd day of December, 2011.


               /s/ Nannette A. Baker
              NANNETTE A. BAKER
              UNITED STATES MAGISTRATE JUDGE