UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LATEASE RIKARD, individually and )
on behalf of others similarly situated, )
)
      Plaintiff(s), )
)
vs. )   Case No. 4:11CV1580 JCH
)
U.S. AUTO PROTECTION, LLC, et al., )
)
      Defendant(s). )

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Certify Counts II and III of the Second Amended Complaint as a Class Action, filed May 2, 2012. (ECF No. 95). The motion is fully briefed and ready for disposition.

## **BACKGROUND**

Defendants U.S. Auto Protection, LLC, and U.S. Auto Warranty, LLC, are Missouri limited liability companies. (Plaintiffs' Second Amended Complaint ("Complaint" or "Compl."), ¶¶ 8-9). According to Plaintiffs, Defendants Ray Vinson, Shawn Vinson, and Matthew McClain are officers or members of the Defendant businesses, and allegedly possess control over the hiring and firing practices, pay practices, and overall operational functions of the entities. (Id., ¶¶ 10-12).

From approximately January through May, 2011, named Plaintiff Latease Rikard was one of many Sales Representatives employed by the Defendant companies at their call center in Chesterfield, Missouri. (Compl., ¶¶ 1, 5). Plaintiffs maintain Defendants employ Sales Representatives to "pre-screen" and "close" telephone sales of vehicle service contracts, which are essentially extended automobile warranties.[1] (Id., ¶¶ 1, 17). According to Plaintiffs, Defendants do not pay their Sales

---

[1] Plaintiff Rikard worked as both a pre-screener and a closer at various times during her employment with the Defendant entities in 2011. (Compl., ¶ 5).

Representatives based on the number of hours they work per week, but instead utilize a commission-based pay scheme, with a weekly or monthly minimum payment. (Id., ¶ 17). Plaintiffs further state that Sales Representatives are not required to track or record the hours they work in any way, and that the Defendant companies have no system in place for doing so. (Id., ¶ 18).

Plaintiffs allege Sales Representatives frequently work in excess of 40 hours in a given workweek, as they often are required to work before and/or after their designated shifts, through some lunch periods, and on certain Saturdays. (Compl., ¶ 19). Plaintiffs assert Defendants refuse to pay the proper overtime pay of one-and-a-half times the regular hourly rate of pay for this excess work, and that this deliberate failure on the parts of Defendants violates the Fair Labor Standards Act ("FLSA") and Missouri law. (Id., ¶¶ 20, 21).[2] Based on this alleged wrongdoing, Plaintiffs filed their Complaint on April 20, 2012, asserting claims for violations of the FLSA (Count I) and the Missouri Wage and Hour Law ("MWHL") (Count II), and unjust enrichment (Count III).

Subsequent to filing their Complaint, Plaintiffs timely petitioned the Court for an order granting conditional certification of the case as a collective action under § 216(b) of the FLSA, and authorizing them to send notice to all current and former Sales Representatives who have worked for Defendants in the last three years. In an Order dated December 23, 2011, the Court conditionally certified the class for purposes of Count I of the Complaint[3], and tailored the possible class of opt-in Plaintiffs to "include only those persons that worked for Defendants as sales representatives . . . from September 13, 2008[,] to September 13, 2011." (ECF No. 37, P. 11).[4] In conditionally certifying

---

[2] Plaintiffs further maintain Defendants' failure accurately to record all time worked by their Sales Representatives violates the FLSA and Missouri law. (Compl., ¶ 22).

[3] Although the Court's December 23, 2011, Order was directed to Plaintiffs' First Amended Complaint, the only change in the Second Amended Complaint was the addition of individual Defendants Brian Schatzberg, Paul Benenati, Josh Markert, and Ben Deverger, each of whom has since been dismissed or settled. (See ECF Nos. 160, 161, 171).

[4] In a subsequent Order dated January 19, 2012, the Court reconsidered the aforementioned timeframe and decided that "the conditionally certified class shall include only those persons that

the class, the Court found that Plaintiffs submitted allegations sufficient to clear the relatively low hurdle of showing that potential class members were co-victims of Defendants' pay practices. (Id., P. 8).  The Court also determined that a three-year statute of limitations was appropriate for the FLSA claim, stating that "Plaintiffs . . . produced sufficient evidence that Defendants either knew or showed reckless disregard for the matter of whether its [*sic*] conduct was prohibited by statute." (Id., P. 10).

On May 2, 2012, Plaintiffs filed the instant Motion to Certify Counts II and III of the Second Amended Complaint as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court must now consider whether such certification is proper under the circumstances of the case.

## **DISCUSSION**

As noted above, Plaintiffs come before this Court requesting certification of a class under Rule 23 of the Federal Rules of Civil Procedure for purposes of Counts II and III of their Complaint. Count II of the Complaint requests compensation under the MWHL for allegedly unpaid overtime work and work compensated at rates below the federal minimum wage, and Count III seeks recovery of those wages based on a theory of unjust enrichment. (Compl., ¶¶ 45-62). Plaintiffs seek class action certification of the pendent state law claims, "to protect the interests of the putative class members who, for whatever reason, including apprehension of suing an employer, have not opted-in to the [previously conditionally certified] federal [FLSA] claim." (Memorandum in Support of Plaintiffs' Motion to Certify Counts II and III of the Second Amended Complaint as a Class Action ("Plaintiffs' Memo in Support"), P. 1 n. 1). Specifically, Plaintiffs ask the Court to certify the following class: "All individuals who have been employed by Defendants as non-supervisory call

---

worked for Defendants as sales representatives . . . from December 14, 2008[,] to December 14, 2011." (ECF No. 41, P. 2).

center employees at any time during the relevant statute of limitations."[5] (Id., P. 2). The Court thus turns to an analysis of whether the Rule 23 threshold for class certification is met.

**I.     Prerequisite Requirements for Class Certification Under Rule 23(a)**

As a preliminary matter, Rule 23(a) establishes four prerequisite conditions to the maintenance of a class action. Fed.R.Civ.P. 23(a). These conditions commonly are referred to as (1) numerosity, which means the class must be "so numerous that joinder of all members is impracticable," (2) commonality, which requires that "there are questions of law or fact common to the class," (3) typicality, which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) adequacy, which ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); see also Paxton v. Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982). Rule 23 makes explicit that all four factors must be met, and therefore the proper analysis does not include a balancing of those factors. Defendants do not contest that numerosity is satisfied in this case, and so the Court turns to a consideration of the remaining three requirements, to determine if Plaintiffs sufficiently meet the prerequisite standard under Rule 23(a).

*A.     Commonality*

Commonality requires that there exist "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Supreme Court of the United States recently noted that the language of this requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (citation and

---

[5] The statute of limitations for MWHL claims is two years (see Mo.Rev.Stat. § 290.527), and that for unjust enrichment is five years (see Mo.Rev.Stat. § 516.120). In light of Plaintiffs' settlement with prior ownership, however, they have agreed to limit their recovery period to "times since November 17, 2009." (Reply in Support of Plaintiffs' Motion to Certify Counts II and III of the Second Amended Complaint as a Class Action, P. 23).

internal quotations omitted). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" Id. (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). However, this "does not mean merely that they have all suffered a violation of the same provision of law." Id. Instead, a plaintiff may meet the commonality standard "'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" Paxton, 688 F.2d at 561 (quoting American Finance Sys., Inc. v. Harlow, 65 F.R.D. 94, 107 (D. Md.1974)). Notably, courts within the Eighth Circuit have stated that "the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied." Mund v. EMCC, Inc., 259 F.R.D. 180, 183 (D. Minn. 2009) (citation and internal quotations omitted).

Defendants assert that because various employees' hours, circumstances, managers, and payment schemes differed during their employment, "there are many dissimilarities within the proposed class that impede the generation of common answers." (Defendants' Memorandum in Response to Plaintiffs' Motion to Certify Counts II and III as a Class Action ("Defendants' Opp."), P. 8). While Defendants are correct that Plaintiffs' situations are not identical, the Court observes that such dissimilarity does not defeat the commonality standard. Here, "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" is substantial. Dukes, 131 S. Ct. at 2551 (citation and internal quotations omitted). For example, if the Defendant companies refused to pay overtime in accordance with Missouri law, then they were in violation of Missouri law as to each Plaintiff who was subjected to such action no matter their differing hours, owners, circumstances, managers, or payment plans. The companies also would have been unjustly enriched for the same reason, and despite the same differences. Thus, because resolution of the legal claims in Counts II and III would apply to each individual Plaintiff no matter his or her differing

factual circumstances, the commonality prong of Rule 23(a) is met. See Nicholson v. UTi Worldwide, Inc., 2011 WL 1775726, at *5 (S.D. Ill. May 10, 2011) (citation omitted) ("Some factual variation in the details of individual claims does not defeat a finding of commonality."). See also Ross v. RBS Citizens, N.A., 667 F.3d 900, 909 (7th Cir. 2012) (citation omitted) ("Although there might be slight variations in how [Defendant] enforced its overtime policy, both classes maintain a common claim that [Defendant] broadly enforced an unlawful policy denying employees earned-overtime compensation. This unofficial policy is the common answer that potentially drives the resolution of this litigation.").[6]

### B. Typicality

In the class certification context, typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The typicality requirement as customarily applied tends to merge with 'commonality.'" Paxton, 688 F.2d at 562 (citation omitted). In order to give the typicality requirement an independent meaning, the Eighth Circuit has held that "Rule 23(a)(3) 'requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff.'" Id. (quoting Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir. 1977)). In other words, a plaintiff must show that "the representative is not alone in his or her dissatisfaction with the employer's unlawful practices so as to assure that there is in fact a class needing representation." Id. (citation and internal quotations omitted). As with the commonality requirement, however, "[t]he burden of showing typicality is not an onerous one." Id.

In the case at hand, Defendants posit that typicality is not satisfied because "each plaintiff will need to produce evidence of overtime worked, as each worked during different time periods, under

---

[6] The Court's finding of commonality is bolstered by the fact that all Plaintiffs worked at a single call center.

different payment plans, reported to different managers, and allege to have worked differing amounts of overtime." (Defendants' Opp., P. 9). At this stage of the analysis, however, such variations do not defeat typicality. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citations omitted). The Court finds Plaintiff Rikard's claim of allegedly going uncompensated for certain hours worked is typical of the other Plaintiffs, no matter the factual differences asserted by Defendants. In other words, Plaintiff Rikard's claims are of the same essential character as the putative class members' claims, in that all rely on the same legal theory--compliance with Missouri law relating to wage payment, and arise out of the same uniform course of conduct-- managers allegedly encouraging and/or requiring Plaintiffs to work beyond their shifts in order to meet established sales goals. See Nicholson, 2011 WL 1775726, at *6. Furthermore, Plaintiffs have shown they will be able to adduce generalized proof related to Defendants' company-wide practices and procedures. Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *14 (S.D.N.Y. Sep. 29, 2006). Under these circumstances, the Court finds Rule 23(a)(3)'s typicality requirement is met. See Velez v. Majik Cleaning Service, Inc., 2005 WL 106895, at *4 (S.D.N.Y. Jan. 19, 2005) ("The named plaintiffs, like members of the putative class, were injured by [Defendant] in the same manner in that they were both underpaid, receiving less compensation than statutorily required. Thus, the claims of the named plaintiffs and the putative class members arise from the same conduct on the part of [Defendant] and are based on the same legal theories. Typicality has therefore been satisfied.").

    *C.*    *Adequacy*

The final prerequisite of Rule 23(a) is proof that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Often, this requirement is

viewed as bearing a parallel relationship to the typicality prong.  See Donaldson, 554 F.2d at 829. "The focus of Rule 23(a)(4) is whether:  (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  Paxton, 688 F.2d at 562-63 (citations omitted).[7]

Here, Defendants do not contest the adequacy of Plaintiffs' counsel, nor do they dispute that the prospective class of Plaintiffs shares the interests of Plaintiff Rikard.  Instead, Defendants' main contention regarding adequacy of representation is that Plaintiff Rikard "has a history of theft, deceit, and criminal behavior, which call [sic] her credibility in this matter into serious question, and are [sic] likely to create an adverse impact on the class."  (Defendants' Opp., P. 12).  They cite the proposition that certification is inappropriate if "unique and substantial issues of credibility cling to the class representative, thereby creating a potential adverse impact on the class." Id. (quoting Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo. 1990)).  Upon consideration, the Court does not agree with Defendants' application of that proposition to the case at hand.  In other words, while Defendants make brief mention of Plaintiff Rikard's allegedly checkered past, the Court does not find that "there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." Dubin, 132 F.R.D. at 272.  This is especially true where, as here, Plaintiff Rikard's alleged failings are unrelated to her employment with Defendants.  As Defendants' own source for their adequacy argument aptly points out, "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished."  Id.

---

[7] Once again, "[t]he burden of demonstrating the class representative's adequacy is not heavy."  Ross v. RBS Citizens, N.A., 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010) (citation omitted).

In total, it is the Court's opinion that the prerequisite requirements of class certification set forth in Rule 23(a) are met in the instant case. The Court thus turns to an analysis of the appropriateness of class certification under the second and more stringent section of Rule 23.

## II. Requirements for Class Certification Under Rule 23(b)

In addition to satisfying the prerequisites under Rule 23(a), a party seeking class action certification must meet one of three possible standards set forth in Rule 23(b). In this case, Plaintiffs maintain certification is appropriate under Rule 23(b)(1) and 23(b)(3). Because it is dispositive, the Court addresses only the application of Rule 23(b)(3).

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Fed.R.Civ.P. 23(b)(3)). These two additional requirements commonly are referred to as "predominance" and "superiority."

### A.    *Predominance*

The requirement of predominance of common questions under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). The Eighth Circuit has stated that "[i]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). The question is a common one only if "the same evidence will suffice for each member to make a prima facie showing." Id. In analyzing this matter, courts may look beyond the pleadings to determine "whether, given the factual setting of the case, if the plaintiffs['] general

allegations are true, common evidence could suffice to make out a prima facie case for the class." Id. (citations omitted).

Here, citing to several recent cases within the Eighth Circuit, Plaintiffs state that "[c]ourts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations." (Plaintiffs' Memo in Support, P. 15). Defendants counter that no such uniform treatment or policy is evident at this stage, and the case bears closer resemblance to "cases in which plaintiffs assert that particular managers, in episodic and distinct ways, deviated from an established policy of compensating employees for all hours worked." (Defendants' Opp., P. 14). The question thus is whether common evidence could be used to show that Defendants' pay system failed adequately to compensate call center workers.

Upon consideration, the Court finds Plaintiffs' evidence that in order to meet daily sales quotas, Defendants' managers commonly required workweeks in excess of forty hours without an increase in weekly pay, is sufficient to show predominance of common issues. See Torres, 2006 WL 2819730, at *16. "Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied." Cortez v. Nebraska Beef, Inc., 266 F.R.D. 275, 293 (D. Neb. 2010). Indeed, Plaintiffs have shown that "the types of activities subject to compensation are uniform among the employees without regard to their individual work experiences." Id. ("Each case for each class member is about the defendants' common pay system for activities by . . . employees[.]"). Therefore, "[i]ndividual questions may exist, but the court does not believe they predominate." Bouaphakeo v. Tyson Foods, Inc., 564 F.Supp.2d 870, 909 (N.D. Iowa 2008). See also Torres, 2006 WL 2819730, at *16 ("This issue [of Defendants' alleged practice of

denying employees overtime pay] predominates over any individual calculations of overtime wages Defendants may owe, if liability is found.").

### B. *Superiority*

In order to garner certification under Rule 23(b)(3), Plaintiffs also must meet the requirement of superiority, which determines whether the class action exception is the best option for the allegedly harmed group. See Nerland v. Caribou Coffee Co., Inc., 564 F.Supp.2d 1010, 1035 (D. Minn. 2007) ("Rule 23(b) . . . requires that class actions be a superior means to adjudicate plaintiffs' claims."). Rule 23(b) offers a non-exclusive list of factors to consider when making a superiority determination, including: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3).

At the outset of their superiority argument, Plaintiffs state that "there is no reason that a class member would prefer to control the prosecution of the case themselves, and no evidence of any such interest exists." (Plaintiffs' Memo in Support, P. 16). The Court finds such a statement to be hasty under the circumstances; in other words, while evidence of interest in individual control may be lacking at the moment, the Court cannot disregard the possibility that, because Rule 23 certifies on an "opt-out" basis, certain unknown Plaintiffs may prefer to bring their own claims. The Court nevertheless finds the first consideration weighs in favor of Plaintiffs, because although the conditionally certified FLSA class is independent from the considerations at hand, there is evidentiary value to the fact that

"almost 100 employees have affirmatively opted-in to the FLSA claim rather than filing their own suits." (Id.).[8]

With respect to Rule 23(b)(3)'s second consideration, Plaintiffs state they are unaware, and Defendants do not make the Court or Plaintiffs aware of, any "litigation concerning the controversy already begun by or against class members." Fed.R.Civ.P. 23(b)(3)(B). This factor thus weighs in favor of class certification as well.

The third consideration, regarding the desirability of concentrating the litigation in this forum, also weighs in favor of Plaintiffs. As of now, the FLSA claim is certified and will go forward in this Court, barring a successful motion for decertification of the conditional class. Thus, judicial economy is promoted by concentration of the claims in this Court. See Ondes v. Monsanto Co., 2011 WL 6152858, at *8 (E.D. Mo. Dec. 12, 2011) (citations and internal quotations omitted) ("Here, because the factual overlap between the FLSA claims and the state wage and hours law claims is virtually total, it would illserve the interests of convenience or judicial economy to re-litigate in state court the defendants' pay practices.").

Finally, the Court finds no particularities in this case that would present "difficulties in managing [the] class action." Fed.R.Civ.P. 23(b)(3)(D). Rather, the Court finds "little reason to expect that the difficulties in managing this class action would be any greater than managing individual actions for the [potentially hundreds of] Rule 23 class members." Torres, 2006 WL 2819730, at *16. Overall, the Court thus finds that a balancing of the several factors weighs in favor of the superiority of a class action.

## CONCLUSION

---

[8] The Court further agrees that, "[b]ecause litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually." Torres, 2006 WL 2819730, at *16 (citation omitted). See also Bouaphakeo, 564 F.Supp.2d at 908 (same).

- 12 -

In light of the foregoing, the Court will certify the requested class under Rule 23 for purposes of Counts II and III of Plaintiffs' Second Amended Complaint. See Simmons v. Enterprise Holdings, Inc., 2012 WL 718640 (E.D. Mo. Mar. 6, 2012). The Court recognizes the decision is a close one[9], but is swayed (1) by the fact that all Plaintiffs worked at a single call center, and (2) by the predominance of a single issue in Plaintiffs' allegations, i.e., whether Defendants encouraged and/or required Plaintiffs to engage in overtime work without compensation, in order to meet sales quotas. The Court reserves the right to bifurcate the issues of liability and damages, however, in order to avoid a series of "mini-trials" on each individual Plaintiff's hours worked and compensation paid. See Velez, 2005 WL 106895, at *4; Cortez, 266 F.R.D. at 294.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Counts II and III of the Second Amended Complaint as a Class Action (ECF No. 95) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Combined Motion to Strike (ECF No. 189) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Combined Second Motion to Strike (ECF No. 202) is **DENIED** as moot.

---

[9] "When a question arises as to whether certification is appropriate, the court should give the benefit of the doubt to approving the class." City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A., 281 F.R.D. 347, 352 (D. Minn. 2012) (citation omitted).

**IT IS FURTHER ORDERED** that this matter is set for a status conference regarding class notification on **Wednesday, December 5, 2012**, at **2:00 p.m.**  The conference will be held by telephone, with Plaintiffs' attorneys initiating the call.  The phone number for chambers is (314) 244-7600.


Dated this   30th   day of November, 2012.


                                          /s/Jean C. Hamilton
                                          UNITED STATES DISTRICT JUDGE