UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATEASE RIKARD, individually and on behalf of others similarly situated, ) ) ) Plaintiff(s), ) ) vs. ) ) U.S. AUTO PROTECTION, LLC, et al., ) ) Defendant(s). ) | Case No. 4:11CV1580 JCH |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Decertify Plaintiff's FLSA Claim as a Collective Action, filed July 3, 2013. (ECF No. 318). The motion is fully briefed and ready for disposition.

## BACKGROUND

Defendants U.S. Auto Protection, LLC, and U.S. Auto Warranty, LLC were Missouri limited liability companies. (Plaintiffs' Second Amended Complaint ("Complaint" or "Compl."), ¶¶ 8-9). According to Plaintiffs, Defendants Ray Vinson, Jr., Shawn Vinson, and Matthew McLain were officers or members of the Defendant businesses, and possessed control over the hiring and firing practices, pay practices, and overall operational functions of the entities. (Id., ¶¶ 10-12).

From approximately January through May, 2011, named Plaintiff Latease Rikard was one of many sales representatives employed by the Defendant companies at their call center in Chesterfield, Missouri. (Compl., ¶¶ 1, 5). Plaintiffs maintain Defendants employed sales representatives to "pre-screen" and "close" telephone sales of vehicle service contracts, which were

essentially extended automobile warranties.[1] (Id., ¶¶ 1, 17). According to Plaintiffs, Defendants did not pay their sales representatives based on the number of hours they worked per week, but instead utilized a commission-based pay scheme, with a weekly or monthly minimum payment. (Id., ¶ 17). Plaintiffs further state that sales representatives were not required to track or record the hours they worked in any way, and that the Defendant companies had no system in place for doing so. (Id., ¶ 18).

Plaintiffs allege sales representatives frequently worked in excess of 40 hours in a given workweek, as they often were required to work before and/or after their designated shifts, through some lunch periods, and on certain Saturdays. (Compl., ¶ 19). Plaintiffs assert Defendants refused to pay the proper overtime pay of one-and-a-half times the regular hourly rate of pay for this excess work, and that this deliberate failure on the parts of Defendants violated the Fair Labor Standards Act ("FLSA") and Missouri law. (Id., ¶¶ 20, 21).[2] Based on this alleged wrongdoing, Plaintiffs filed their Complaint on April 20, 2012, asserting claims for violations of the FLSA (Count I) and the Missouri Minimum Wage Law (Count II), and unjust enrichment (Count III).

Subsequent to filing their Complaint, Plaintiffs timely petitioned the Court for an order granting conditional certification of the case as a collective action under § 216(b) of the FLSA, and authorizing them to send notice to all current and former sales representatives who had worked for Defendants in the last three years. In an Order entered December 23, 2011, the Court conditionally certified the class for purposes of Count I of the Complaint[3], and tailored the possible class of opt-in

---

[1] Plaintiff Rikard worked as both a pre-screener and a closer at various times during her employment with the Defendant entities in 2011. (Compl., ¶ 5).

[2] Plaintiffs further maintain Defendants' failure accurately to record all time worked by their sales representatives violated the FLSA and Missouri law. (Compl., ¶ 22).

[3] Although the Court's December 23, 2011, Order was directed to Plaintiffs' First Amended Complaint, the only change in the Second Amended Complaint was the addition of

Plaintiffs to "include only those persons that worked for Defendants as sales representatives . . . from September 13, 2008[,] to September 13, 2011." (ECF No. 37, P. 11).[4] In conditionally certifying the class, the Court found that Plaintiffs had submitted allegations sufficient to clear the relatively low hurdle of showing that potential class members were co-victims of Defendants' pay practices. (Id., P. 8). The Court also determined that a three-year statute of limitations was appropriate for the FLSA claim, stating that "Plaintiffs . . . produced sufficient evidence that Defendants either knew or showed reckless disregard for the matter of whether its [*sic*] conduct was prohibited by statute." (Id., P. 10).

On November 30, 2012, the Court certified a Rule 23(b)(3) class for Counts II and III of Plaintiffs' Complaint. (ECF No. 213). The class consists of all individuals who were employed by Defendants as non-supervisory call center employees at any time during the relevant statute of limitations. In deciding to certify the class, the Court recognized that the decision was a close one. It therefore reserved the right to bifurcate the issues of liability and damages, "in order to avoid a series of 'mini-trials' on each individual Plaintiff's hours worked and compensation paid." (Id., P. 13).

As stated above, Defendants filed the instant Motion to Decertify Plaintiff's FLSA Claim as a Collective Action on July 3, 2013. (ECF No. 318). In their motion, Defendants claim Plaintiffs are unable to show they are "similarly situated" with respect to their overtime wage claims, as required to sustain a collective action under the FLSA. (Id.).

---

individual Defendants Brian Schatzberg, Paul Benenati, Josh Markert, and Ben Deverger, each of whom has since been dismissed or settled. (See ECF Nos. 160, 161, 171, 339).

[4] In a subsequent Order entered January 19, 2012, the Court reconsidered the aforementioned timeframe and decided that "the conditionally certified class shall include only those persons that worked for Defendants as sales representatives . . . from December 14, 2008[,] to December 14, 2011." (ECF No. 41, P. 2).

## DISCUSSION

Under the FLSA, an action to collect unpaid overtime wages "may be maintained against any employer....by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *See* 29 U.S.C. § 216(b). "Unlike a Rule 23 class action, no employee is a party to an FLSA collective action unless that employee 'opts in'--that is, gives written consent to become a party." *Simmons v. Valspar Corp.*, 2013 WL 2147862, at *3 (D. Minn. May 16, 2013) (citation omitted). "Plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions." *Kautsch v. Premier Communications*, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008), citing *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). "To show that they are similarly situated, Plaintiffs may present evidence to show that an employer engaged in a unified policy, plan, or scheme of FLSA violations." *Id.* (citation omitted). "Such a showing is not required, however, if Plaintiffs can otherwise show that their positions are similar, not identical, to the positions held by the other class members." *Id.* (internal quotation marks and citation omitted).

"Within the Eighth Circuit, the district courts conduct a two-step analysis to determine whether employees are 'similarly situated.'" *Littlefield v. Dealer Warranty Services, LLC*, 679 F.Supp.2d 1014, 1016 (E.D. Mo. 2010), citing *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009). During the first step, the plaintiffs seek early conditional class certification. *Schleipfer v. Mitek Corp.*, 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007). "This initial step creates a lenient standard which typically results in conditional certification of a representative class." *Chankin v. Tihen Commc'ns, Inc.*, 2009 WL 775588, at *1 (E.D. Mo. Mar. 20, 2009) (internal quotation marks and citation omitted).

During the second step, the defendants may move to decertify the class. *Schleipfer*, 2007 WL 2485007, at *3. During this stage, the Court reviews several factors to determine whether plaintiffs have established they are similarly situated, including "(1) 'the extent and consequences of disparate factual and employment settings of the individual plaintiffs,' including whether plaintiffs were affected by a common decision, plan, or policy; (2) 'the various defenses available to the defendant which appear to be individual to each plaintiff;' and (3) other 'fairness and procedural considerations.'" *Simmons*, 2013 WL 2147862, at *4, quoting *Nerland v. Caribou Coffee Co.*, 564 F.Supp.2d 1010, 1018 (D. Minn. 2007).

> Even where factors (1) and (2) weigh in favor of decertification of a provisionally certified class, the district court must balance those factors with the fundamental purpose of 29 U.S.C. § 216(b): (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves "common issues of law and fact that arose from the same alleged activity."

*Kautsch*, 2008 WL 294271, at *2, quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000).

## I. **Plaintiffs' Employment Setting And Job Duties**

As noted above, the first factor the Court must consider is the extent to which the factual and employment settings of the individual Plaintiffs varied. *Simmons*, 2013 WL 2147862, at *4. Upon consideration, the Court finds this factor weighs in favor of a collective action, for several reasons. First, the Court notes all Plaintiffs worked at a single call center. Second, although Defendants assert various employees' hours, circumstances, managers, and payment schemes differed during their employment, such dissimilarity does not defeat Plaintiffs' claim to be similarly situated. Rather, the Court notes Plaintiff Rikard's claims are of the same essential character as the other class members' claims, in that all rely on the same legal theory--noncompliance with federal law relating to wage payment, and arise out of the same alleged uniform course of conduct--managers encouraging and/or

requiring Plaintiffs to work after their shifts in order to meet established sales goals. To support their claim that they were similarly situated, Plaintiffs present evidence in the form of documentation and records, declarations by call center employees, sworn questionnaire responses, and deposition testimony, all tending to demonstrate Defendants' managers regularly instructed Plaintiffs to work through their lunches, on Saturdays, and beyond their scheduled shifts, in order to meet their quotas. This voluminous evidence gives rise to an inference that Defendants maintained a top-down, centralized policy regarding overtime. *See Kautsch*, 2008 WL 294271, at *3.

## II.     Defendants' Defenses

The second factor to consider is defenses individual to each Plaintiff. *See Simmons*, 2013 WL 2147862, at *5. To the extent the Court was able to analyze this factor[5], it finds the likely defenses may be raised in a collective forum, "where [Defendants] will be free to present evidence of [their] lawful employment policies and practices, to cross-examine individual representative plaintiffs, and to call to the stand others with material testimony that helps the [Defendants'] case." *Wilks v. Pep Boys*, 2006 WL 2821700, at *7 (M.D. Tenn. Sep. 26, 2006). "Additionally, the court will consider bifurcation of the case into a liability stage, where the parties could address the alleged existence of an impermissible policy or practice, and a damages one, where they could, if necessary, debate the impact of that policy or practice on individual plaintiffs." *Id.*, citing *Thiessen v. Gen. Elec. Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001). This factor thus weighs in favor of denying decertification as well.

## III.    Procedural And Fairness Considerations

---

[5] The Court was hindered in its consideration of this factor by the scant evidence and analysis provided by Defendants on the point. (*See* Defendants' Memorandum of Law in Support of their Motion to Decertify Plaintiff's FLSA Claim as a Collective Action, P. 22).

Finally, the Court finds procedural and fairness considerations weigh in favor of maintaining class certification. *Simmons*, 2013 WL 2147862, at *5. "The FLSA is a remedial statute which should be read in favor of coverage." *Fast v. Applebee's Intern., Inc.*, 2009 WL 2391921, at *2 (W.D. Mo. Aug. 3, 2009), citing *Kelly v. Alamo*, 964 F.2d 747 (8th Cir. 1992). As noted above, "[a] collective action allows plaintiffs 'the advantage of lower individual costs by the pooling of resources' and benefits the judicial system 'through the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged violative activity.'" *Simmons*, 2013 WL 2147862, at *5, quoting *Brennan v. Qwest Commc'ns Int'l, Inc.*, 2009 WL 1586721, at *6 (D. Minn. Jun. 4, 2009). Plaintiffs have established that they are sufficiently similarly situated, and the fairness and procedural considerations raised by Defendants do not warrant disturbing the Court's conclusion that at least the liability phase of this case should proceed to trial collectively. *Fast*, 2009 WL 2391921, at *2.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Decertify Plaintiff's FLSA Claim as a Collective Action (ECF No. 318) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Billy Held's Deposition Testimony (ECF No. 356) is **DENIED** as moot.

Dated this 4th day of October, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE