UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATEASE RIKARD, individually and on behalf of others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11CV1580 JCH |
| ) | |
| U.S. AUTO PROTECTION, LLC, et al., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Individual Plaintiffs who Violated the Court's Order to Provide Discovery, filed July 3, 2013. (ECF No. 309). The motion is fully briefed and ready for disposition.

By way of background, Defendants U.S. Auto Protection, LLC, and U.S. Auto Warranty, LLC were Missouri limited liability companies. (Plaintiffs' Second Amended Complaint ("Complaint" or "Compl."), ¶¶ 8-9). According to Plaintiffs, Defendants Ray Vinson, Jr., Shawn Vinson, and Matthew McLain were officers or members of the Defendant businesses, and possessed control over the hiring and firing practices, pay practices, and overall operational functions of the entities. (Id., ¶¶ 10-12).

From approximately January through May, 2011, named Plaintiff Latease Rikard was one of many sales representatives employed by the Defendant companies at their call center in Chesterfield, Missouri. (Compl., ¶¶ 1, 5). Plaintiffs maintain Defendants employed sales representatives to "pre-screen" and "close" telephone sales of vehicle service contracts, which

were essentially extended automobile warranties.[1] (Id., ¶¶ 1, 17). According to Plaintiffs, Defendants did not pay their sales representatives based on the number of hours they worked per week, but instead utilized a commission-based pay scheme, with a weekly or monthly minimum payment. (Id., ¶ 17). Plaintiffs further state that sales representatives were not required to track or record the hours they worked in any way, and that the Defendant companies had no system in place for doing so. (Id., ¶ 18).

Plaintiffs allege sales representatives frequently worked in excess of 40 hours in a given workweek, as they often were required to work before and/or after their designated shifts, through some lunch periods, and on certain Saturdays. (Compl., ¶ 19). Plaintiffs assert Defendants refused to pay the proper overtime pay of one-and-a-half times the regular hourly rate of pay for this excess work, and that this deliberate failure on the parts of Defendants violated the Fair Labor Standards Act ("FLSA") and Missouri law. (Id., ¶¶ 20, 21).[2] Based on this alleged wrongdoing, Plaintiffs filed their Complaint on April 20, 2012, asserting claims for violations of the FLSA (Count I) and the Missouri Minimum Wage Law (Count II), and unjust enrichment (Count III).

Subsequent to filing their Complaint, Plaintiffs timely petitioned the Court for an order granting conditional certification of the case as a collective action under § 216(b) of the FLSA, and authorizing them to send notice to all current and former sales representatives who had worked for Defendants in the last three years. In an Order entered December 23, 2011, the Court

---

[1] Plaintiff Rikard worked as both a pre-screener and a closer at various times during her employment with the Defendant entities in 2011. (Compl., ¶ 5).
[2] Plaintiffs further maintain Defendants' failure accurately to record all time worked by their sales representatives violated the FLSA and Missouri law. (Compl., ¶ 22).

conditionally certified the class for purposes of Count I of the Complaint[3], and tailored the possible class of opt-in Plaintiffs to "include only those persons that worked for Defendants as sales representatives . . . from September 13, 2008[,] to September 13, 2011." (ECF No. 37, P. 11).[4]  In conditionally certifying the class, the Court found that Plaintiffs had submitted allegations sufficient to clear the relatively low hurdle of showing that potential class members were co-victims of Defendants' pay practices. (Id., P. 8). The Court also determined that a three-year statute of limitations was appropriate for the FLSA claim, stating that "Plaintiffs . . . produced sufficient evidence that Defendants either knew or showed reckless disregard for the matter of whether its [sic] conduct was prohibited by statute." (Id., P. 10).[5]

On April 13, 2012, Plaintiffs filed a Motion for Protective Order, requesting that the Court limit the scope of discovery Defendants could propound on the FLSA opt-in Plaintiffs. (ECF No. 78). Shortly thereafter, Plaintiffs filed a Motion to Certify Counts II and III of their Complaint as a Rule 23 Class Action. (ECF No. 95). The Court eventually approved a limited discovery questionnaire to be disseminated to every opt-in Plaintiff, and interrogatories and requests for production to be propounded to a representative sample of Plaintiffs, with all responses due no later than August 17, 2012.

---

[3] Although the Court's December 23, 2011, Order was directed to Plaintiffs' First Amended Complaint, the only change in the Second Amended Complaint was the addition of individual Defendants Brian Schatzberg, Paul Benenati, Josh Markert, and Ben Deverger, each of whom has since been dismissed or settled. (See ECF Nos. 160, 161, 171, 339).

[4] In a subsequent Order entered January 19, 2012, the Court reconsidered the aforementioned timeframe and decided that "the conditionally certified class shall include only those persons that worked for Defendants as sales representatives….from December 14, 2008[,] to December 14, 2011." (ECF No. 41, P. 2).

[5] In an Order entered October 4, 2013, the Court denied Defendants' Motion to Decertify Plaintiff's FLSA Claim as a Collective Action, concluding that members of the conditionally certified class were sufficiently similarly situated to allow at least the liability phase of the case to proceed to trial collectively. (ECF No. 400).

With an apparently incomplete set of discovery responses in hand, Defendants filed their response to Plaintiffs' Motion to Certify Counts II and III of their Complaint as a Rule 23 Class Action on September 17, 2012.  (ECF No. 172).  Two days later, Defendants filed a motion for leave to supplement their earlier response, on the ground that they had received a late questionnaire response from opt-in Plaintiff Amanda Maestas.  (ECF No. 173).  The Court granted Defendants' request on September 20, 2012.  (ECF No. 174).

On September 25, 2012, Defendants filed a Motion to Strike Plaintiffs' Discovery Response.  (ECF No. 182).  In their motion, Defendants stated they continued to receive late discovery responses from opt-in Plaintiffs, and that such responses were prejudicial because they had already filed their response to Plaintiffs' Motion to Certify Counts II and III as a Class Action.  Defendants therefore requested that the Court strike the late-filed response of opt-in Plaintiff Claudia Gonzalez, and that "it, and any other untimely discovery responses, not be used by Plaintiffs to support any pleading, motion or at trial of this matter."  The Court granted Defendants' Motion to Strike in a docket text order entered October 10, 2012.  (ECF No. 198).[6]  At that time, Defendants did not request that non-responding Plaintiffs be dismissed from this action.

The parties then were permitted to engage in discovery until April 30, 2013.  (ECF No. 197).  They further were granted until May 11, 2013, within which to pursue motions to compel.  (Id., P. 2).  Defendants filed a motion to compel regarding incomplete discovery responses on

---

[6] The Court further granted Plaintiffs' Motion to Certify on November 30, 2012, certifying a Rule 23(b)(3) class for Counts II and III of Plaintiffs' Complaint consisting of all individuals who were employed by Defendants as non-supervisory call center employees at any time during the relevant statute of limitations.  (ECF No. 213).

May 8, 2013, but did not reference the missing questionnaires, interrogatories and requests for production.  (ECF No. 258).

As noted above, Defendants filed the instant Motion to Dismiss on July 3, 2013, nearly nine months after the ruling on their motion to strike, and two months after the close of discovery.  With their filing, Defendants seek the ultimate penalty of dismissal with prejudice of non-responding Plaintiffs' FLSA and Rule 23 claims.

"The Federal Rules of Civil Procedure permit dismissal with prejudice '[f]or failure of a plaintiff to prosecute or to comply with these rules or any order of court.'"  *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000), quoting Fed.R.Civ.P. 41(b).  Dismissal with prejudice is an extreme sanction, however, "that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay."  *Id.* (citation omitted).  Furthermore, "[e]ven where the facts might support dismissal with prejudice, this ultimate sanction…should only be used when lesser sanctions prove futile."  *Id.* (internal quotation marks and citation omitted).

Had Defendants timely pursued a motion to compel with respect to the missing responses, the Court could have ordered those Plaintiffs to provide the discovery.  The Court further could have warned Plaintiffs they would face sanctions, up to and including dismissal, for failing to respond as directed.  *Davis v. Westgate Planet Hollywood Las Vegas, LLC,* 2010 WL 2872406, at *4-5 (D. Nev. Jul. 19, 2010).  Defendants' dilatory filing deprived the Court of these options, and thus the Court finds dismissal, either with or without prejudice, is inappropriate at this juncture.

- 6 -

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Individual Plaintiffs who Violated the Court's Order to Provide Discovery (ECF No. 309) is **DENIED**.

Dated this 10th day of October, 2013.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE